## NEWTON v. TRACY LOAN & TRUST CO.

No. 5397.   Decided April 16, 1936.   (56 P. [2d] 624.)

*Cheney, Jensen, Marr & Wilkins* and *Walter C. Hurd,* all of Salt Lake City, for appellant.

*L. B. Wight,* of Salt Lake City, for respondent.

MOFFAT, Justice.

On the original hearing in this case, appellant directed the attack at three major propositions: (1) That the trial court was in error in finding that the transactions between Newton and Megeath constituted an open and mutual running account. In the original opinion herein (*Newton* v. *Tracy Loan & Trust Co.,* 88 Utah 547, 40 P. (2d) 204, we sustained the trial court in its position as to that matter. The rehearing developed nothing to justify a change from that position. (2) That the trial court erred in admitting in evidence certain ledger sheets purporting to be an account between the parties. For the reasons also stated in the former opinion, we think the trial court did not err in admitting the evidence objected to. (3) The third major proposition was that the theory of plaintiff's case and especially the testimony of Mrs. Newton was incredible. We have again read the complete record of Mrs. Newton's testimony and reviewed some of the other testimony several times, and have rechecked the questioned testimony, and find no reason to recede from the position taken particularly as to Mrs. Newton's testimony. She was, when all the situation is analyzed, a fair witness. That some errors and mistakes were evidence, she readily admitted and corrected to the best of her knowledge on the subject.

These same propositions were reargued and resubmitted on the rehearing. In addition to those general propositions, certain specific items were urged which might be construed to fall within the general assignment of insufficiency of the evidence. Upon the reargument, appellant argued three specific items not argued upon the former hearing, two of which were covered by assignments; one of which was not, unless included within the blanket assignment.

No assignment is made as to the item of interest allowed by the trial court. There is some evidence to the effect that interest was paid to Megeath upon the avenue houses. The exact amount of interest does not appear specifically from the evidence, nor the dates nor amounts upon which interest was calculated. In the claim filed with the administrator, the following statement is made:

"Claimant has not yet computed the interest on said claim by reason of not having access to all the records of the transactions mentioned in the foregoing statement. Such information will be furnished the executor as soon as possible."

As indicated, there is evidence showing that plaintiff was entitled to some interest. There being no assignment directed specifically to interest, it was assumed the interest calculation was correct. We, upon an attempted check of the matter, do not find the elements from which we can determine the amount of interest as found by the court. In the absence of an assignment on the matter, and as the trial court seems to have carefully tried the cause and checked each item allowed, we think we are not in a position to question the interest item.

It is however, argued with much earnestness that the court erred in failing to allow Megeath a credit of $2,200 about which the witness Jenkins testified, relating to the Lynndyl venture. This proposition was duly assigned as error and referred to in appellant's brief, but was not stressed in argument. The record is most difficult of analysis and application. It does appear that the witness Jenkins, while testifying for plaintiff, referred to a number of checks received by him from Newton, as to one or more of which we have not been able to discover the application made, yet he testified definitely that Mr. Megeath paid $2,200 in cash upon the Lynndyl townsite notes. The trial court may have been able to make application of some evidence that is not clear to us, or that we are unable to discover or apply as the trial court did. We find no contradic-

tion of this evidence. We have not been able to discover any credit given to Megeath for that amount, or, if credited, we have not been able to identify it. For that reason, it would appear that the judgment entered by the district court should be reduced.

The trial court in framing its findings took the claim of plaintiff as presented to defendant executor, and disallowed certain items therein claimed. By the claim presented, plaintiff demanded, as shown by the findings, the payment of the sum of $12,506.92. The trial court found this claim to be true in all respects except as to the items and deductions made therefrom. In making the deductions and reducing the findings to final form, the trial court said:

"The court strikes from said account the following items, to-wit:
"In Re:  Montana Oil Venture:

| | | |
|---|---:|---:|
| Oct. 1924 ................................... | $ 110.00 | |
| Feb. 1925, item of $105.00 reduced to ........ | 25.00 | |
| March 1, 1925 ................... | 2,693.25 | $ 2,828.25 |

"In addition thereto the deceased paid to acquire the property in Montana, the sum of ......................$5,500.00 of which amount he received from plaintiff the sum of ............ 4,130.00 leaving him a net credit of ........ | 1,370.00

Also there was expended by the deceased and plaintiff in the operation or development of said lands the sum of ................... 4,800.00 of which ....................... 1,674.14 said deceased received from plaintiff, and for the expense of said development the deceased was entitled to a credit of ........................ | 3,125.86

In re: Lynndyl Holding Company:
The court strikes from said account

| | | |
|---|---:|---:|
| the item of .................... | 3,700.00 | |
| the item of .................... | 800.00 | |
| and a lumber bill of $200.00 is reduced to (by) ............... | 7.14 | 4,507.14 |

| | |
|---:|---:|
| | $11,831.25 |

"That by said account the plaintiff charged the deceased and made claim for 50% of the items so stricken, and that the deceased is entitled to a credit of 50% of the net amounts advanced by him, as aforesaid, and that there is therefore deducted from the account of plaintiff, to-wit, the sum of $12,506.92, 50% of said sum of $11,831.25, to-wit, $5,915.62."

It is further found by the trial court:

"That the said deceased is entitled to a further credit of 100 per cent of the difference between the amount credited in said account of a note in the sum of $770.00, and the true amount of said note, to-wit, $773.25, to-wit, the sum of $3.25, and that there was due, owing and payable from the defendant executor, as aforesaid, on the 3rd day of March, 1930, when said account was presented to said defendant for payment, as aforesaid, the sum of $6,588.05."

Therefore, when the executor is allowed a further credit for 50 per cent of the amount of the Jenkins payment on the Lynndyl venture, to wit, $2,200, the amount then to be deducted from the $12,506.92 would be 50 per cent of the sum of $11,831.25, plus $2,200, or $14,031.25. Fifty per cent of this last amount leaves a net amount of $7,015.62 to be deducted; this being the same result as deducting the sum of $1,100.00 from $6,588.05, or $5,488.05. Arithmetically stated, $11,831.25 divided by 2 equals $5,915.62. This last amount subtracted from $12,506.92 leaves a balance of $6,591.30, from which the trial court deducted the sum of $3.25 as provided in the paragraph last above quoted, making the amount of the judgment entered the sum of $6,588.-05. The court is unanimous in the view that the last-mentioned sum should be reduced by 50 per cent of the Lynndyl payment, thus reducing the amount to $5,488.05.

A majority of the court are of the opinion that the executor should be allowed a further credit of 50 per cent. of the sum of $2,994.75 on the Montana oil deal, thus reducing the judgment of $5,488.05 by $1,497.37, thus reducing the net amount of the judgment to $3,990.68. From this last proposition a minority of the court dissent and support the findings of the trial court in relation thereto. The majority of

the court are indicating herewith their views upon the matter upon which we have been unable to agree. All, however, are agreed that the respondent should be allowed to accept the reductions as herein indicated, and if the same are accepted within 20 days from the filing of this opinion, the judgment as modified will be affirmed, with costs to the respondent. But, unless the respondent accepts such reduction within such time, the cause will be remanded to the trial court for a new trial, with costs to appellant. Upon the exercise of the option herein provided for, the final order in harmony therewith will be duly entered.

FOLLAND and EPHRAIM HANSON, JJ., concur.

ELIAS HANSEN, Chief Justice (concurring in part, dissenting in part).

I concur in the view that the evidence shows that Megeath paid $2,200 on the Lynndyl property for which he should be given credit in the judgment appealed from. So, also, in my opinion, the evidence does not support the amount found owing to Newton by Megeath on either the Montana Oil venture or the First avenue transactions. The evidence is all to the effect that Megeath and Newton sold their interest in the Montana oil venture for the same amount that they put into it. Such is the testimony of William R. Livingston, who was associated with Megeath and Newton in that venture. The testimony of Mr. Livingston as to that fact finds support in the testimony of N. W. Clayton and A. M. Seiler. There is no evidence to the contrary. The written contract whereby Messrs. Megeath and Newton sold their oil interests in Montana contains the following provision:

"Upon a further payment being made by the second party of $13,994.75 to the parties of the first part, (Megeath and Newton), within 60 days from the date of this agreement, the parties of the first part are to assign, sell and set over to the said second party all of their right, title and interest, in and to the leases, and extensions thereof obtained by said second party, and * * * their ownership in and to the rig, casing, tools and sundries now at said well being

drilled on the property. The parties of the first part also agree to endorse without recourse note of Dr. Hasler, Dr. Clark and Dr. Jarrett amounting, with accrued interest * * * to $2,164.25 less $50 collected by and due from George McClane, together with 150,000 shares of stock in Ute-Mo. Oil Co."

It will thus be noted that Megeath and Newton sold their interest in Montana for $13,994.75 which, as heretofore indicated, is the amount which they paid for their interest. Newton claims that he put into that venture the sum of $5,939.14. The trial court found, however, that the correct amount that Newton should be credited with having put into that venture is $5,804.14. It follows, therefore, that the remainder, or $8,190.61, must have been put in by Megeath. Newton received from the sale of their Montana oil interest the sum of $1,000, leaving $4,804.14 that he did not receive back. The trial court found that Megeath received from the sale of the Montana oil venture the sum of $10,000, so that he received out of that transaction $1,809.39 more than he put in. Obviously, if only $11,000 was received out of the sale of the Montana oil venture, there was a cash loss in that venture of the sum of $2,994.75. If there were such a loss, Megeath is by the judgment appealed from charged with the whole thereof.

It is made to appear by the testimony of Mr. Clayton that just prior to the death of Mr. Megeath he had in his possession some notes in which Mr. Newton claimed a one-half interest. Mr. Clayton testified that Mr. Megeath said that he had received some notes from Atkin and Clegg on the Montana oil proposition; also some notes of Jarrett, Hasler, and Clark. Apparently, one of these notes was for $500 and another for $2,164. If these notes represent a part of the sale price of the Newton-Megeath interest in the Montana oil venture as plaintiff's evidence would seem to indicate, then and in such case the notes would account for the greater part of the apparent cash loss in that undertaking. The evidence as to those notes is so meager, however, as to be of but little or no value. So far as appears, the notes may or may

not be collectible. Certainly, there is nothing in this record which would justify the conclusion that Megeath should be denied credit for $2,994.75 which he must have put into the Montana oil venture, merely because he had in his possession shortly before his death certain notes which were received by him as a part of the sale price of the Megeath-Newton interest in the Montana Oil venture. I am thus of the opinion that in any event the judgment appealed from should be reduced in the sum of $1,497.37 on account of the Montana oil venture.

The estate of Megeath was charged with $3,936.25 interest collected by the deceased during his lifetime on the contracts for the sale of the First avenue property. The evidence supports only a part of that item. Mr. Clayton, who purchased one of the houses, testified that he paid in interest on his contract the sum of $1,183.35. The record is silent as to the amount of interest, if any, that was paid on the other two contracts. Apparently, the contracts for the sale of the houses on First avenue called for 7 per cent. interest on deferred payments. Mrs. Groshell paid to Megeath in principal the sum of $2,500 on the property she bought. The balance of the purchase price was paid by her assuming a mortgage for $2,500 which was on the property when she purchased it. The record is silent as to the amount of interest paid by her. There is no evidence as to the amount of interest, if any, paid on the contract for the sale of what is referred to as the Smith home. Thus, upon this record the estate of Megeath is not properly chargeable with interest collected on the contracts for the sale of the First avenue property in excess of $1,183.35.

It is indicated in the prevailing opinion that appellant's assignments of error do not attack the matter of the interest found to have been paid to Megeath on the First avenue houses. Appellant's assignment of error No. 16, subd. (d) thereof, reads as follows:

"The evidence is further insufficient to sustain said Finding in that there is no evidence whatever of any payment to said Joseph P. Me-

geath on account of one of the houses included in the said First Avenue house transaction, to-wit, the so-called Smith house, and nevertheless, the said Megeath is charged with $3000.00 on account of such payments, and the relative rights of the plaintiff and the said Megeath, as determined in said Finding are arrived at by including as a charge against said Megeath the amount of such payments of which no evidence whatsoever was offered."

Assignment No. 6, page 8, of the assignments of error, is to the same effect. Assignment No. 7, subd. (k) thereof, is as follows:

"The evidence is further insufficient to support that portion of said Finding No. 7 wherein it is found that on the 3rd day of March, 1930, when the account of plaintiff was presented to the defendant, Executor, there was due and owing to plaintiff the sum of $6588.05. On the contrary, the evidence affirmatively shows that on said date no amount whatsoever was owing to the plaintiff, but that on the contrary the plaintiff was indebted to the said Megeath or to this defendant, as Executor of said Megeath, in a sum in excess of $6000.00."

These and other assignments of similar import are, in my opinion, sufficient to require this court to review the account with respect to the First avenue transactions. When it is so reviewed, the evidence fails to show that Megeath collected interest on those contracts in excess of the amount heretofore indicated.

Because of these errors, the judgment appealed from should be reversed and the cause remanded to the district court of Salt Lake county, with directions to grant a new trial; respondent to pay costs on appeal.

WOLFE, Justice (concurring).

I concur in the opinion of the Chief Justice that the judgment appealed from should be reduced in the sum of $1,-497.37 on account of the Montana oil venture, with both opinions that the Megeath estate should be given credit for $2,200 on the Lynndyl property deal. I concur with Mr. Justice MOFFAT that there is evidence sufficient in a case like this that Megeath collected all the interest from the First

avenue contracts. This comes as an inference from the following facts: None of the interest was paid to Newton, and it must be presumed, therefore, that all the interest was paid to Megeath because the purchasers of the property received title, and it is a fair inference that title would not have been conveyed unless the interest was paid up; since interest, therefore, must have been paid to these two and no other, and since one of the two did not receive any, the other must have gotten it. In a case such as this where one of the coventurers is dead and the accounts are in an uncertain state, the greatest certainty of proof is not possible. In order to adjust the matter between the survivor and the estate of the other, we must do the best with the evidence which is adducible.

For these reasons, I concur in the decision as laid down by Mr. Justice MOFFAT.