## WASATCH LIVESTOCK LOAN CO. v. NIELSON et al.

No. 5614.   Decided October 23, 1936.   (61 P. [2d] 616.)

*Thomas & Thomas,* of Salt Lake City, and *Larson & Larson,* of Manti, for appellants.

*Christenson, Straw & Christenson,* of Provo, and *J. A. Hougaard* and *E. A. Britsch,* both of Manti, for respondent.

ELIAS HANSON, Chief Justice.

This cause has heretofore been argued and an opinion rendered. 90 Utah 307, 56 P. (2d) 613. The Wasatch Livestock Loan Company, hereinafter referred to as the loan company, and Hilma N. Becker, in her individual capacity and as the administratrix of the estate of Mary J. Phillips, deceased, have each filed a petition for a rehearing. S. M. Nielson, administrator of the estate of Wm. L. Madsen, deceased, has filed a petition asking that the opinion heretofore rendered be amended to the end that the judgment of the trial court be affirmed in its entirety. In support of its petition for rehearing the loan company stresses the argument that if the general creditors of Wm. L. Madsen, deceased, have a lien on the assets of the estate, such lien attached as of the time of Mr. Madsen's death, at which time the loan company's mortgage was in good standing, and hence superior to the liens of the general creditors of the insolvent estate. It is urged that in the opinion heretofore written we misconceived what the learned author of Jones on Chattel Mortgages and Conditional Sales conceived to be the better doc-

trine. In the former opinion we quoted at some length from that author, not for the purpose of showing that he favored the conclusions which we reached, but to illustrate the diversity of opinions and the reasons which are advanced in support of the respective views. It is true, as contended by the loan company, that the learned author of that work favors the doctrine contended for by the loan company. It is also urged that we misconceived the holding of the court in the case of *Folsom* v. *Peru Plow Co.*, 69 Neb. 316, 95 N. W. 635, 636, 111 Am. St. Rep. 537. It is true, as pointed out by the loan company in its brief in support of its petition for rehearing, that the mortgage involved in that action was not recorded at the time the mortgagor died or at the time the administrator took possession of the mortgaged property. In such respect that case is distinguishable from the case in hand. That case, however, is authority for the doctrine that "a general creditor of an estate has no lien on the assets until his claim has been adjudicated and allowed." It was in support of such view that the foregoing case was cited. Other cases where the same doctrine is announced are cited in the Folsom Case, supra. In its final analysis the position of the loan company is that upon the death of a mortgagor the mortgagee is, as to general creditors of the mortgagee, relieved of keeping the mortgage alive as provided by R. S. Utah 1933, 13-0-1 and 13-0-2, and that in any event the general creditors of deceased may not question the validity of a mortgage which was valid and properly filed at the time of the death of the mortgagor. As will be seen from an examination of the authorities cited in the former opinion, there are authorities which, under statutes similar to ours, support the loan company's position. However, in the light of the language used in the various statutory provisions and authorities referred to in the former opinion in this case, we are constrained to adhere to the conclusions reached in that opinion. A further discussion of those authorities would serve no useful purpose. The petition of the loan company for a rehearing is denied.

In support of her petition for rehearing Mrs. Becker contends that at the time Mr. Madsen died and for some time prior thereto he was the bailee and not the vendee of the sheep claimed by Mrs. Becker and Mrs. Phillips, and hence the law with respect to the necessity of having leases of sheep acknowledged and filed has no application. We have read the transcript of the evidence offered and received at the trial. Such evidence establishes these facts. In 1920 Mrs. Becker and Mrs. Phillips each leased sheep to Mr. Madsen. Contrary to the findings of the court below, the evidence is such as to require a finding that the sheep so leased were placed in Mr. Madsen's herd. Mr. Madsen paid the lessors for the leased sheep as by the leases provided. From time to time the leases were renewed, but so far as is made to appear none of the lease agreements were acknowledged or filed. Mr. Madsen bought some but not all of the leased sheep. The number of sheep that Mrs. Phillips and Mrs. Becker were each entitled to receive from Mr. Madsen varied from time to time, but at all times each of them were entitled to in excess of 100 sheep. The increase of the leased sheep were marked and branded with Mr. Madsen's earmarks and wool brand. The original leased sheep were, after being sheared, branded with Mr. Madsen's brand, but the earmarks on the sheep originally turned over to Mr. Madsen were not changed. At the time this controversy arose there were very few, if any, of the sheep originally leased to Mr. Madsen in his herd. It is to be inferred from the evidence that all, or nearly all, of the sheep originally leased to Mr. Madsen had died from old age or other causes before this controversy arose.

In September or October, 1930, Mr. Madsen was informed by Mrs. Phillips and Mrs. Becker that they desired to terminate their leases. One France Brotherson was authorized and directed by Mrs. Phillips and Mrs. Becker to go to Mr. Madsen's sheep herd and separate the sheep to which they were entitled under the lease agreements. Apparently Mr. Madsen was willing to deliver the sheep as

provided by the lease agreements, but when Mr. Brotherson attempted to take the sheep out of the Madsen herd an agent of the loan company prevented him from doing so. The loan company at that time claimed its mortgage covered all of the sheep in the Madsen herd. In support of the claim of Mrs. Becker that the leases in question created the relation of bailors and bailee, and not that of vendors and vendee, a number of authorities and cases are cited, among them the following from this jurisdiction: *Turnbow* v. *Beckstead,* 25 Utah 468, 71 P. 1062; *Wetzel* v. *Deseret National Bank,* 30 Utah 62, 83 P. 570; *Rich* v. *Utah Commercial & Savings Bank,* 30 Utah 334, 84 P. 1105. The facts in those cases are distinguishable from the facts in the instant case; but as those cases were decided before the enactment of the law requiring the acknowledgment and filing of leases such as those here brought in question, we need not pause to point out the distinction. The law announced in the foregoing cases is to the effect that if a lease agreement makes the lessee a mere bailee of the sheep leased, then and in such case the lessor's claim to such sheep is superior to the claims of a vendee or mortgagee of the lessee. Independent of statute such is the established law in this jurisdiction. It, however, is clear that when the Legislature enacted the law making the interest of a lessor of sheep in excess of 100 head "subsequent to claims of creditors of the lessee," it thereby changed the law as announced in the cases theretofore decided by this court to the end that when more than 100 head of sheep are leased without complying with the law as to acknowledgment and filing, then and in such case the lessor is precluded from making the claim as against general creditors of the lessee that the lease agreement constitutes a bailment and not a sale. The language of the act is:

"All leases, and all contracts of sale or agreements to sell in which the title is retained in the seller until the purchase price is paid in whole or part, of more than * * * one hundred head of sheep shall be in writing and must be acknowledged in the same manner as grants of real property, and such leases or agreements, or copies thereof duly

certified by an officer authorized to take acknowledgments, shall be filed in the office of the county recorder of the county in which the lessee or buyer of the property resides. Failure to comply with the provisions of this section shall render the interest of the lessor or seller in said property subject, subsequent and subordinate to the claims of the creditors of the lessee or buyer." (Rev. St. 1933, 33-3-1.)

It is evident that the purpose sought to be accomplished by the foregoing act was to confer upon those who in good faith extended credit to a vendee or lessee of sheep in excess of 100 head the right to rely upon such vendee's apparent title to sheep in his possession under a lease. Each of the leases involved in this controversy contains among others this provision:

"It is understood that the sheep hereby leased are of a rambouilette type and that at the expiration of this lease the party of the second part (Madsen) will deliver back to the party of the first part (Mrs. Becker in one case and Mrs. Phillips in the other) the number of sheep hereby leased plus any increase that has been left with him as herein provided; that said sheep shall be of the type and approximate ages of those herein leased, without cripples or defectives.

"The term of this lease shall be for three (3) years from and after the date hereof, provided that the party of the first part may terminate this lease and agreement and receive her sheep at the end of any lease year by giving the party of the second part thirty days notice of her intention to do so."

Each of the leases was entered into on October 1, 1927, and by their terms expired on October 1, 1930. It is apparently conceded by Mrs. Becker, as well it may be, that if, by the lease, title to the sheep vested in Mr. Madsen, then and in such case she cannot successfully maintain her claim and that of the estate of Mrs. Phillips to any of the money derived from the sale of the sheep. Assuming without deciding that counsel for Mrs. Becker are right in their contention that by the lease agreements Madsen became the bailee and Mrs. Becker and Mrs. Phillips became the bailors of the sheep, how stands the case? The terms "lessor" and "lessee" are not synonymous with "bailor" and "bailee"; but when by the terms of the agreements of lease the sheep covered thereby are to be returned to the

lessor, such an agreement constitutes a bailment. 6 C. J. 1085, 1086. So far as appears from the record before us, neither Mrs. Becker nor Mrs. Phillips made any effort to enforce their demand for the sheep until they appeared in this suit and asserted their claims. In the meantime Mr. Madsen had died. An administrator of his estate had been appointed. Such administrator had qualified. He had taken possession of the sheep. Notice to creditors had been given to present their claims. The time for presenting claims had expired. Claims in excess of the value of the assets of the estate had been presented and approved by both the administrator and the judge of the court in which the estate was being probated. During all of that time and for many years prior thereto the sheep claimed by Mrs. Becker individually and as administratrix of the estate of Mrs. Phillips remained in the Madsen herd with his marks and brands thereon. At no time, so far as appears, after the sheep were originally leased in 1920, were any of them set apart from the rest of the herd as belonging to either Mrs. Becker or Mrs. Phillips. Under such a state of facts it is difficult to perceive how the demand made for the return of the sheep can aid the claims of Mrs. Becker individually or as administratrix. If the provisions of the statute placing claims of creditors of a lessee of sheep superior to those of the lessor may be rendered inoperative by a mere agreement of the parties thereto to revoke the lease, then and in such case the purposes sought to be accomplished by the act would, in many cases, fail. As heretofore stated in this opinion, the statute is aimed to protect bona fide creditors of lessees and vendees from secret claims by lessors and vendors. The statute points the way for lessors and vendors to maintain the superiority of their claims and provides the penalty for a failure to comply with its provisions. Lessors and vendors may not escape the effect of the statute by merely making an agreement between themselves terminating the lease agreement theretofore entered into. To so hold would open the door to the evil which the Legislature sought to cure.

It is next urged that creditors of the Madsen estate having failed to levy on the sheep are not in a position to take advantage of the failure of Mrs. Becker and Mrs. Phillips to have their leases acknowledged and filed as required by the act. What we have said in our discussion touching the rights of the general creditors of the Madsen estate and the mortgagee loan company is equally applicable here. The same general principles control in each instance. We shall not repeat or attempt to enlarge upon what is said in the former opinion upon that question. The petition of Mrs. Becker individually and as administratrix of the estate of Mrs. Phillips for a rehearing is denied.

A careful reading of the transcript of the evidence convinces us that we were in error in the former opinion in assuming that the $700 which Mr. Nielson as administrator of the Madsen estate borrowed from the loan company had not been paid. During the first part of the trial evidence was offered and received tending to show that the money borrowed by the administrator remained unpaid. However, near the end of the trial A. R. Truman, the head bookkeeper of the plaintiff, was called and testified for that company. From his testimony it appears that on February 7, 1931, the loan company received $2,715.78, and on October 2, 1931, the sum of $1,505.41 for the sale of lambs belonging to Mr. Madsen or his estate. Mr. Truman testified that sufficient of the money so received was applied to the payment in full of the $500 note dated May 13, 1931, and signed by the "executor" (doubtless meaning administrator), and that $288.08 of that money was applied on an open account of Mr. Madsen or his estate. The remainder of the money so received by the loan company was applied on the $15,000 note which was secured by the mortgage in controversy. The note which Mr. Nielson signed as administrator of the estate of Wm. L. Madsen, deceased, was dated May 13, 1931, so that it is reasonably clear that the note which Mr. Truman testified was paid with some of the money derived from the sale of the lambs was the note mentioned in the loan com-

pany's complaint. So, also, the account in the sum of $288.08 which was paid with some of the money derived from the sale of the lambs must have included the $200 mentioned in the loan company's complaint, because so far as appears no claim is made by the loan company that it advanced any other money to Mr. Nielson as administrator of the Madsen estate.

The claim made by the administrator that interest should be allowed on the money held by the loan company at least after the decree was entered in the court below is not free from doubt. The stipulation entered into by the parties as to what disposition should be made of the money derived from the sale of the sheep pending the litigation provides:

"That the court may at its option appoint a receiver or order and authorize the plaintiff to take possession of the sheep, equipment and property mentioned and described in the complaint, and in the order to show cause herein, and to sell the same on or after October 3rd, 1931, without notice, to the highest and best bidder and to hold the proceeds derived from said sale in the hands of the plaintiff subject to the orders of the court, to be disposed of by the court on final hearing and determination of the rights of the respective parties hereto. * * *

"It is further stipulated that the plaintiff shall forthwith execute and file herein corporate surety bond to be approved by the court, in the sum of $8000.00, conditioned for the payment to the defendants, S. M. Nielson, Administrator of the estate of Wm. L. Madsen, Deceased, and Hilma N. Becker, and each of them, any and all amounts and costs herein expended which may be found by the court herein to be due and owing out of the proceeds of said sale to them or either of them."

Contrary to his contention, the administrator is not entitled to interest on the theory of a conversion by the loan company of the sheep or the money. The answer of the administrator does not allege sufficient facts to constitute a conversion nor do the proofs show that the loan company was guilty of the conversion of the sheep or the money. On the contrary, the loan company took possession of the sheep and sold the same pursuant to the stipu-

lation, a part of which we have heretofore quoted. There is neither allegation nor proof of a conversion. In such case no interest can be allowed on the theory that there was a conversion. It will be observed the stipulation provides that the court may either appoint a receiver or authorize the plaintiff to take possession of the sheep and that plaintiff may "hold the proceeds derived from said sale * * * subject to the orders of the court, to be disposed of by the court on final hearing and determination of the rights of the respective parties hereto." No issue was raised and no proofs offered in the court below on the question of interest on the money held by the loan company. The administrator did not pray for interest but did pray for general relief. It will be observed by the terms of the stipulation that the loan company was required to hold the money until final hearing and determination. It would seem reasonably clear that the parties to the stipulation did not contemplate that the loan company should pay any interest. The use of the word "hold" tends to indicate that the money should not be used by the company. If the loan company was merely to hold the money as the stipulation indicates, it could not justly be charged with legal interest. The fact that the stipulation provides that the court should either appoint a receiver or permit the loan company to take possession of the sheep and sell the same also tends to indicate that no interest was to be paid. If a stranger to the proceeding had been appointed receiver, it could not be successfully contended that he should pay legal interest on the money held by him. The loan company was in effect a receiver. The stipulation that the money should be held until the final hearing and determination lends support to the view that if an appeal were had the custody of the money should remain with the loan company. Nor may it be said that the loan company was solely responsible for withholding the money from the administrator. Mrs. Becker also appealed. She was a party to the stipulation and as such was entitled to have the provisions of such stipulation complied with pending the appeal to this court.

For these reasons in addition to those mentioned in the former opinion, we adhere to the view that the loan company should not be required to pay interest on the money held by it up to the time the remittitur in this cause is filed in the court below.

From what has been said it follows that the opinion heretofore rendered in this cause should be amended to the end that the Wasatch Livestock Loan Company is not entitled to retain any part of the money which it holds. Otherwise the conclusion reached in the former opinion should not be disturbed. Such is the order.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., and CHRISTENSON, District Judge, concur.

WOLFE, J., being disqualified, did not participate herein.