ON PETITION FOR REHEARING
155 After issuance of the decision in this case, the County filed a petition for rehearing, asserting that in footnote 14 of our June 12, 2014 decision, we "overlooked or misapprehended a critical fact." In response to the petition, we have elected to strike the footnote previously numbered 14 from the decision. Except for striking the footnote, our decision remains unchanged. We address the County's arguments on petition for rehearing as follows.
156 The previous version of footnote 14 read,
The district court awarded Nebeker damages for the loss of the Condominium Unit on the basis that "he would have had a lien" but for the County's failure to perform the "duty [it] owed to Mr. Nebeker." The County counters that regardless of the Writ, Nebeker was an unsecured creditor who was only entitled to his pro rata share of the assets that were available for unsecured creditors as a whole. Even if the district court erred in treating Ne-beker as a secured creditor-an issue we need not resolve-any error was harmless because the court also concluded that none of the other persons who asserted unsecured claims on the estate had their claims *221 approved so as to allow them to participate in any proportional distribution of estate assets. Thus, regardless of whether the County's proper recording of the Writ would have given Nebeker the status of a secured creditor with the Condominium Unit as collateral, or whether Nebeker would have had merely an unsecured claim against the unencumbered assets of the estate available for distribution (apparently limited to the Condominium Unit) to the class of unsecured ereditors, of which Ne-beker was the sole member, he was entitled to the full value of the unit.
1 57 The County challenges our conclusion that any error in the district court's decision to treat Nebeker as a secured creditor "was harmless because the court also concluded that none of the other persons who asserted unsecured claims on the estate had their claims approved so as to allow them to participate in any proportional distribution of estate assets." It asserts that the district court never found that there were no other unsecured creditors. According to the County, the effect of our conclusion that the district court made such a finding was to "allow[ ] Nebeker to obtain ... money based on the loss of an Estate asset to the exclusion of at minimum the two other creditors with allowed claims." In his response, Nebeker conceded "that two other [unsecured] claims against the Estate were approved."
58 Despite footnote 14's indication otherwise, it is apparent that the County is making an argument about Nebeker's entitlement to only a pro rata share of any distribution for the first time in a petition for rehearing. At no point prior to rehearing did the County assert that Nebeker's entitlement to the Rhineer estate judgment was limited to his pro rata share; it simply argued that he was entitled to no recovery at all.[16] In its initial briefing, the County argued that governing law dictates that upon the debtor's death, "all unsecured eredi-tors('] claims be treated equally." We do not disagree with this proposition. See su-pro "I 45 (citing Wasatch Livestock Loan Co. v. Nielson, 90 Utah 807, 56 P.2d 613, 617 (1986) ("One who was a mere general creditor before the death remains such after it. His position with respect to other creditors remains unchanged."), amended in part by 90 Utah 881, 61 P.2d 616 (1936); id. at 620 ("IIlt is apparent that a creditor, after the death of his debtor, is precluded from seeur-ing a specific lien on the property of the estate by attachment, execution, or other legal process ... [,] that is, claims presented and allowed have the same standing whether they be founded upon a judgment or claims allowed and approved by the administrator and the court.")). But the County made this argument only in the context of its claim that the Writ was improperly issued and so it did not give Nebeker secured creditor status, which meant that Nebeker could only recover whatever he would have been entitled to as an unsecured creditor of the estate. Because the County believed that the unsecured ereditors would not have received any distribution from the estate even if the Condominium Unit had been preserved, see supro 145, it argued that Nebeker was not entitled to collect anything from the County.
59 In other words, the County opted to pursue challenges to the propriety of the Writ's issuance, the resulting judgment, and the County's liability on that judgment, rather than to address how any judgment, if sustained, might be allocated among the creditors. In making this choice, the County did not raise any claims regarding proportionate distribution. Furthermore, it neither challenged the district court's finding that Nebeker was the only unsecured creditor that had reduced its claim to judgment nor contested the district court's implied legal conclusion that, as a result, there simply were no unsecured creditors, other than Ne-beker, who had any viable claim to a share in any recovery from the County.
160 We will not now consider such a challenge raised for the first time on rehearing. We routinely decline to consider an issue raised for the first time in a reply brief. *222 Allen v. Friel, 2008 UT 56, ¶8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." (citation and internal quotation marks omitted)). And we see no reason to do so when the issue is presented in the first instance in a petition for rehearing. See generally Harper v. Evans, 2008 UT App 165, ¶18 n. 5, 185 P.3d 578 (refusing to consider, on petition for rehearing, the appellant's claim regarding the commencement of the sixty-day period for agency review under the administrative code because that "issue was not raised in the initial briefing").

. Indeed, nowhere in the opening or reply brief did the County use the words "proportionate," "proportional," or "pro rata."