2014 UT App 244

# THE UTAH COURT OF APPEALS

JIM NEBEKER,
Plaintiff, Appellee, and Cross-appellant,

*v.*

SUMMIT COUNTY,
Defendant, Appellant, and Cross-appellee.

Amended Opinion[1]
No. 20120269-CA
Filed October 17, 2014

Third District Court, Silver Summit Department
The Honorable Robert K. Hilder
The Honorable Todd M. Shaughnessy[2]
No. 090500413

Michael Z. Hayes and Todd J. Godfrey, Attorneys
for Appellant and Cross-appellee

Richard M. Hymas, David L. Arrington, and
Josh D. Chandler, Attorneys for Appellee
and Cross-appellant

JUDGE STEPHEN L. ROTH authored this Amended Opinion, in
which JUDGES J. FREDERIC VOROS JR. and MICHELE M.
CHRISTIANSEN concurred.

---

1. This Amended Opinion replaces the Opinion issued June 12,
2014, *Nebeker v. Summit County*, 2014 UT App 137. In response to
a petition for rehearing by Summit County, we have removed
former footnote 14 and added paragraphs 55 to 60.

2. Judge Robert K. Hilder denied Summit County's motion to
dismiss for lack of jurisdiction and its motion for summary
judgment. Judge Hilder also granted summary judgment in
favor of Jim Nebeker on liability. Judge Todd M. Shaughnessy
awarded Nebeker damages.

ROTH, Judge:

¶1 Summit County (the County) appeals the entry of judgment in favor of Jim Nebeker on Nebeker's negligence claim. Nebeker cross-appeals, contending that the court improperly imposed a statutory cap to reduce the judgment from $594,400.21 to $221,400. We affirm.

BACKGROUND

¶2 John Rhineer was Nebeker's accountant prior to Rhineer's death on November 14, 2003. Later that year, Wells Fargo Bank sued John Rhineer's estate and Nebeker's business, Jim Nebeker Trucking, Inc., seeking, among other things, "a determination of non-liability for allowing John Rhineer to deposit Nebeker's monthly tax deposits in John Rhineer's personal Wells Fargo account instead of Nebeker's IRS trust account." On March 26, 2004, Jim Nebeker intervened and filed a cross-claim against the Rhineer estate asserting that John Rhineer had embezzled funds from both Nebeker and his business. Nebeker brought the claim against David Rhineer, John Rhineer's son, who purported to be the personal representative of the estate but, as it turned out, had never been appointed. Later, in June 2004, the probate court appointed Greg Rhineer, another of John Rhineer's sons, as personal representative. Wells Fargo immediately filed an amended complaint substituting personal representative Greg Rhineer as the defendant, but Nebeker did not move to substitute Greg Rhineer for David Rhineer as the estate's personal representative until June 10, 2005, nineteen months after John Rhineer's death.

¶3 On March 26, 2004, the date that Nebeker originally intervened in the case, he also obtained a prejudgment writ of attachment (the Writ) against the Rhineer estate. The Writ directed the County Sheriff to "attach and safely keep all the property" held by the Rhineer estate, including Unit 25-C of the

Stonebridge Condominiums (the Condominium Unit). Nebeker delivered the Writ, along with the legal description of the Condominium Unit, to the Summit County Sheriff for levy. The sheriff posted the required notices and promptly submitted the Writ to the County Recorder for recording, but the sheriff failed to include the legal description of the Condominium Unit as required by rule 64C of the Utah Rules of Civil Procedure. Utah R. Civ. P. 64C(e)(1) (explaining that "[t]he officer to whom the writ is directed must execute the same without delay, and . . . [attach any r]eal property, standing upon the records of the county in the name of the defendant, . . . by filing with the recorder of the county a copy of the writ, together with a description of the property attached, and a notice that it is attached").[3] The recorder discovered the omission shortly thereafter and notified the sheriff, but the sheriff did not correct the error until nearly a year later, in March 2005. In the meantime, on August 20, 2004, the Condominium Unit was sold to a bona fide third-party purchaser, who bought the property without notice of the Writ due to the sheriff's failure to include the legal description.

¶4    On March 8, 2005, Nebeker filed a notice of claim under the Governmental Immunity Act of Utah, alleging negligence by the County Sheriff and the County Recorder in failing to properly record the Writ. *See* Utah Code Ann. § 63G-7-401(2) (LexisNexis 2011) (requiring "[a]ny person having a claim against a governmental entity, or against its employee for an act or omission occurring during the performance of the employee's duties, . . . [to] file a written notice of claim with the entity before maintaining an action").[4] After the County rejected Nebeker's

---

3. All references to rules 64A and 64C in this decision are to the version of the rules in effect when the Writ issued in March 2004.

4. As a convenience to the reader, we cite the most recent codification of any code section where the statute has not

(continued . . .)

claim, he filed suit against the County in the Third Judicial District Court on March 30, 2006. The parties later stipulated to a dismissal of the case without prejudice, agreeing that "due to the doctrine of ripeness, the statute of limitations regarding Nebeker's claims against the Sheriff and Recorder had not yet begun to run."

¶5 On November 5, 2007, Nebeker obtained a default judgment against the Rhineer estate in the amount of $11.9 million (the Rhineer estate judgment). A little over a month later, on December 12, 2007, Nebeker refiled his negligence lawsuit against the County Sheriff and the County Recorder. On March 26, 2008, the district court dismissed the case for lack of jurisdiction after the court determined that the County, not the sheriff or recorder, was the proper defendant and that Nebeker's 2005 notice of claim had not fulfilled the requirement to give notice to the County itself.

¶6 Nebeker filed a second notice of claim on September 11, 2008, this time naming the County as the negligent party, through the actions of its sheriff and recorder. The County did not respond, and on May 21, 2009, Nebeker filed a new complaint in the district court alleging that the County had negligently recorded the Writ without the Condominium Unit's legal description. The parties filed cross-motions for summary judgment. The district court granted the County's motion with respect to the recorder[5] but denied its motion as to the sheriff. Instead, the court granted Nebeker's cross-motion on the issue of liability, holding that the County was responsible to Nebeker for the sheriff's failure to properly record the Writ. It reserved damages for later resolution.

---

undergone a substantive amendment. When the statute has been substantively amended, we cite the version then in effect.

5. Nebeker has not appealed the district court's summary judgment decision with respect to the recorder.

¶7 The County then filed a motion to dismiss the case for lack of subject matter jurisdiction, asserting that both the Writ and the Rhineer estate judgment on which Nebeker's claim was based were void. In particular, the County claimed that the district court did not have jurisdiction to enter the Writ because a personal representative of the estate had not yet been appointed at the time the Writ was granted and that even if the court had jurisdiction, a writ of attachment could not be issued against the property of an estate. *See id.* § 75-3-104 (Michie 1993) ("No proceeding to enforce a claim against the estate of a decedent or his successors may be revived or commenced before the appointment of a personal representative."); *id.* § 75-3-812 ("No execution may issue upon nor may any levy be made against any property of the estate under any judgment against a decedent . . . ."). It further asserted that Nebeker's embezzlement claim was barred due to his failure to bring the claim against the estate's personal representative within one year of John Rhineer's death as required by the probate code. *See id.* § 75-3-803(1)(a) (LexisNexis Supp. 2013) ("All claims against a decedent's estate which arose before the death . . . are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented within . . . one year after the decedent's death."). The district court decided, however, that the validity of the Rhineer estate proceedings, including the issuance of the Writ and the entry of judgment, were not subject to collateral attack in this separate proceeding. The court further decided that even if such an attack were permissible, the court could still resolve the case because a district court has subject matter jurisdiction over probate matters generally. It therefore denied the motion to dismiss.

¶8 Following a bench trial on damages, the district court entered judgment for Nebeker in the amount of $594,400.21 ($335,000 for the loss of the value of the Condominium Unit plus prejudgment interest and costs). The court then applied the statutory cap on property damage awards against governmental entities to reduce the judgment to $221,400. *See id.* § 63-30d-604(1)(c) (LexisNexis Supp. 2004) (current version at 63G-7-

604(1)(c) (LexisNexis 2011)); Utah Admin. Code R37-4-2, -3(4); *see also* Utah Code Ann. § 63G-7-102 (LexisNexis 2011). Both parties now appeal.

ISSUES AND STANDARDS OF REVIEW

¶9     The County asserts that Nebeker's negligence claim is jurisdictionally barred under two theories: first, it asserts that the claim is barred because Nebeker failed to file a timely notice of claim under the Governmental Immunity Act of Utah; second, it contends that the Utah Uniform Probate Code bars recovery from the County because Nebeker failed to timely file his underlying claim against the estate. Both theories raise questions regarding the district court's subject matter jurisdiction, which is an issue of law. *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 10, 266 P.3d 702. The County's claim about Nebeker's compliance with the probate code, however, attempts to challenge the validity of the Rhineer estate judgment by raising an issue about the timeliness of Nebeker's embezzlement claim that was not raised in the case in which that judgment was entered. A judgment may only be attacked in a collateral proceeding if the judgment is void as opposed to merely voidable. *Farley v. Farley*, 431 P.2d 133, 137 (Utah 1967) ("If a judgment be void, it is open to collateral attack."); *Bangerter v. Petty*, 2010 UT App 49, ¶ 8, 228 P.3d 1250 ("Errors other than lack of jurisdiction render the judgment merely voidable, and a voidable judgment can only be challenged on direct appeal." (citation and internal quotation marks omitted)). Whether a judgment is void or voidable is a question of law. *See Bangerter*, 2010 UT App 49, ¶ 10.

¶10 The County also challenges the district court's conclusions and findings on each element of negligence. First, it argues that the court erred in determining that the sheriff had a duty to Nebeker. Whether a duty exists is an issue of law, and we will review the district court's conclusion that a duty arose

for correctness. *Jeffs ex rel. B.R. v. West*, 2012 UT 11, ¶ 25, 275 P.3d 228.

¶11 The County next asserts that even if it owed a duty to Nebeker, it did not breach that duty. Although normally "breach . . . [is a] question[] for the fact finder determined on a case-specific basis," *id.*, "when the facts are undisputed and only one conclusion can be drawn from them," breach becomes a question of law, *Silcox v. Skaggs Alpha Beta, Inc.*, 814 P.2d 623, 624 (Utah Ct. App. 1991).

¶12 Third, the County claims that its failure to properly record the Writ was not a proximate cause of Nebeker's loss of the Condominium Unit because Greg Rhineer's dissipation of the proceeds of the Condominium Unit's sale constituted an intervening and superseding cause of Nebeker's injury. Proximate cause is generally a question for the finder of fact but may be decided as a matter of law if "the facts are undisputed and but one reasonable conclusion can be drawn therefrom." *Dee v. Johnson*, 2012 UT App 237, ¶ 3, 286 P.3d 22 (citation and internal quotation marks omitted).

¶13 Finally, the County appeals the damages award. It argues that "Nebeker was not damaged by [the County because] his recovery from the [Rhineer] Estate was not reduced as a result of the negligent acts of the Summit County Sheriff." The County's argument amounts to a challenge to the district court's findings of fact. We will not disturb a court's findings of fact unless they are clearly erroneous. Utah R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

¶14 On cross-appeal, Nebeker also challenges the damages award, asserting that the district court erred in reducing the judgment as it did because his claim was not for "property damage" but rather for "personal injury," which is subject to a

higher statutory damages cap. We review a district court's interpretation of a statute for correctness. *McQueen v. Jordan Pines Townhomes Owners Ass'n, Inc.*, 2013 UT App 53, ¶ 7, 298 P.3d 666.

ANALYSIS

I. Notice of Claim

¶15 The County asserts that Nebeker failed to file a timely notice of claim. The Governmental Immunity Act of Utah (the Act) requires "[a]ny person having a claim against a governmental entity . . . [to] file a written notice of claim with the entity" "within one year after the claim arises." Utah Code Ann. §§ 63G-7-401, -402 (LexisNexis 2011). According to the County, Nebeker's negligence claim arose as early as late March or early April 2004 when the sheriff recorded the Writ without a legal description of the Condominium Unit, but no later than March 2005 when Nebeker filed the original notice of claim against the County Sheriff and County Recorder. Yet Nebeker did not file a notice of claim against the County until more than three years later in September 2008, and the County argues that the filing was therefore untimely. Nebeker counters that his claim did not arise until November 2007, when he obtained a judgment against the Rhineer estate, and that his September 2008 notice of claim was in fact timely.

¶16 The parties agree that *Bank One Utah, NA v. West Jordan City*, 2002 UT App 271, 54 P.3d 135, controls. In *Bank One*, Upper Valley Utilities (UVU) contacted West Jordan City about marking the city's utility lines before UVU began drilling activities to install an underground fiber optic conduit. *Id.* ¶ 3. West Jordan negligently marked its lines, and as a result, UVU drilled into the sewer line servicing Bank One. *Id.* The bank experienced some clogging in its restrooms a few days later and contacted West Jordan. *Id.* ¶ 4. On March 15, 1999, West Jordan

inspected the sewer line and reported that it had found no problems. *Id.* Bank One then hired a private contractor to identify the source of the problem with its restrooms. *Id.* ¶ 5. On March 22, 1999, the contractor discovered that the sewer line had been punctured and needed repair. *Id.* That same day, both UVU and West Jordan denied responsibility for the puncture, and Bank One later repaired the sewer line at its own expense. *Id.* One year later, on March 22, 2000, Bank One filed a notice of claim against West Jordan for negligent inspection of the line. *Id.* ¶ 6. The district court determined that Bank One's notice of claim was untimely because the cause of action accrued on March 15, 1999, when the city's inspection had taken place. *Id.* Bank One appealed, and we reversed, holding that a claim arises when "a cause of action has accrued, which occurs upon the happening of the last event necessary to complete the cause of action." *Id.* ¶ 8 (citation and internal quotation marks omitted). We concluded that the "last event necessary to complete [Bank One's] cause of action" happened on March 22, 1999, because that was when the bank first became "aware that its property had been harmed by the negligently handled drilling work," that "West Jordan was responsible for properly marking the lines," and that "UVU denied it was at fault." *Id.* ¶¶ 8, 15 (citation and internal quotation marks omitted). Although the amount of damages remained to be determined, "all the events necessary to complete the claim," including the fact of damages, "had occurred by that date." *Id.* ¶ 15. Prior to that date, we reasoned, Bank One did not have enough information to link West Jordan to the sewer issue, particularly in light of the city inspector's statement on March 15 that there was no problem with the sewer line. *Id.* ¶ 13.

¶17   The parties in this case disagree about when the "last event necessary to complete the cause of action" occurred. *See id.* ¶ 8 (citation and internal quotation marks omitted). The County contends that Nebeker knew by at least March 8, 2005, when he filed his original notice of claim, that any interest he may have been able to claim in the Condominium Unit by virtue of the Writ had been impaired through the sheriff's failure to include

the legal description in the recorded document. The County further contends that as a consequence of the Writ's shortcomings, Nebeker had been damaged by the sale of the Condominium Unit to a bona fide purchaser who had no notice of Nebeker's interest. According to the County, only the amount of damages remained to be determined at that point. *See id.* ¶ 15. Thus, "all the events necessary to complete the claim had occurred by that date," thereby starting the notice-of-claim clock. *See id.* Nebeker counters that "all the events necessary to complete the claim had [not] occurred" because he had not suffered injury from the mere failure to properly record the prejudgment writ; rather, harm occurred only at the point when he attained a judgment that the Writ would have secured had it been properly recorded. *See id.* Nebeker points out that a writ of attachment is an inchoate or contingent lien upon attached property, *James v. Eames*, 519 P.2d 236, 238 (Utah 1974), that is perfected only upon the entry of the judgment it is meant to secure, *In re McNeely*, 51 B.R. 816, 819 (Bankr. D. Utah 1985). Thus, according to Nebeker, damage occurred—and the cause of action accrued—upon entry of the judgment in November 2007.

¶18     We addressed this very question in *Tuttle v. Olds*, 2007 UT App 10, 155 P.3d 893. In the mid-1990s, the State sent out notice to certain property owners in the Pahvant Valley who were using more water than their certificated water rights allowed. *Id.* ¶¶ 2–3. The Tuttles were not among those notified. *Id.* ¶ 3. The State followed up in 1996 with a letter to all of the property owners in the valley, including the Tuttles, representing that it had given notice to all those who were using more water than they were entitled to and advising that all irrigated lands were now properly certificated. *Id.* Two years later, in 1998, the Tuttles listed their property for sale. *Id.* ¶ 4. During negotiations with a prospective buyer, the Tuttles received a second letter from the State, this time "expressing concern about a diesel-powered well on the Property for which no water rights could be identified." *Id.* The Tuttles did not disclose the second letter to the buyers and instead used the State's 1996 letter as evidence that the property had sufficient water rights. *Id.* The buyers purchased

the property and, when they later discovered the lack of water rights for the well, sued the Tuttles, seeking "damages for the decrease in the Property's value as a result of the inability to legally irrigate the Property to the extent represented." *Id.* On April 30, 2003, the buyers won a judgment against the Tuttles. *Id.* Just short of a year later, on April 28, 2004, the Tuttles filed a notice of claim against the State for the State's negligence in providing misleading information in the 1996 letter about the extent of their water rights. *Id.* ¶ 5. The State filed a motion to dismiss, asserting that the notice of claim was untimely because the cause of action arose, at the latest, in 1998 when the State notified the Tuttles that their well lacked water rights. *Id.* ¶¶ 5, 11–12. The district court granted the motion. *Id.* ¶ 5. We reversed, explaining "'the law does not recognize an inchoate wrong, and therefore, until there is actual loss or damage resulting to the interests of another, a claim for negligence is not actionable.'" *Id.* ¶ 11 (quoting *Seale v. Gowans*, 923 P.2d 1361, 1364 (Utah 1996)). Rather, when "there exists a possibility, even a probability, of future harm," a "plaintiff must wait until some harm manifests itself." *Id.* (citation and internal quotation marks omitted). Thus, it was "[o]nly after the . . . judgment was entered [that the Tuttles] suffer[ed] an actual loss." *Id.* ¶ 12.

¶19    Applying the principles of *Tuttle* here, we conclude that Nebeker's claim against the County did not accrue until the Rhineer estate judgment was entered in November 2007 because even though there was a possibility, even a probability, of harm from the sale of the Condominium Unit unimpeded by the faulty writ, no actual injury occurred until the judgment was rendered and no property was available in the estate to satisfy that judgment. The September 2008 notice of claim was therefore timely.

## II. Enforceability of the Rhineer Estate Judgment

¶20    The County also asserts that it cannot be liable for its failure to properly record the Writ because Nebeker's claim for damages arose from a void judgment against the Rhineer estate.

Specifically, the County argues that the court in the Rhineer estate suit lacked jurisdiction to enter a judgment against the estate because section 803 of the Utah Uniform Probate Code bars "[a]ll claims against a decedent's estate which arose before the death of the decedent . . . unless presented within . . . one year after the decedent's death." Utah Code Ann. § 75-3-803(1)(a) (LexisNexis Supp. 2013).[6] And Nebeker did not file his cross-claim against Greg Rhineer, the actual personal representative of the estate, until June 10, 2005, more than a year after John Rhineer's death in 2003. Nebeker counters that the Rhineer estate judgment is not subject to collateral attack. In taking this position, Nebeker adopts the reasoning of the district court in denying the County's motion to dismiss on this basis: because a district court has subject matter jurisdiction over probate matters generally, the court that handled the Rhineer estate litigation had jurisdiction to resolve Nebeker's claims against the estate; consequently, any challenge to Nebeker's compliance with section 803 must have been brought in that case, not in a collateral proceeding. Thus, assuming for purposes of appeal that Nebeker failed to timely present his claim, the County's ability to attack the Rhineer estate judgment depends on whether that judgment is thereby rendered void or merely voidable.[7]

---

6. The alternate time period identified by the statute for filing a claim against the estate does not apply here. *See* Utah Code Ann. § 75-3-803(1)(b) (LexisNexis Supp. 2013).

7. Alternatively, Nebeker argues that he did comply with the probate code because he presented his claim within one year of John Rhineer's death by filing a cross-claim against the estate's self-identified personal representative, David Rhineer, in March 2004 as part of the Wells Fargo litigation. David Rhineer had held himself out as the estate's personal representative, but it turned out that he was never actually appointed. Nebeker asserts that when he later amended his cross-claim to name Greg Rhineer, the estate's appointed personal representative, the

(continued . . .)

¶21 "[A]n attack upon a judgment is regarded as collateral if made when the judgment is offered as the basis of a claim in a subsequent proceeding." *Tolle v. Fenley*, 2006 UT App 78, ¶ 15, 132 P.3d 63 (citation and internal quotation marks omitted). "If a judgment [is] void, it is open to collateral attack." *Farley v. Farley*, 431 P.2d 133, 137 (Utah 1967); 46 Am. Jur. 2d *Judgments* § 29 (2006). But "[t]he concept of a void judgment is narrowly construed in the interest of finality." *Brimhall v. Mecham*, 494 P.2d 525, 526 (Utah 1972). Thus, "[e]rrors other than lack of jurisdiction render the judgment merely voidable, and a voidable judgment can only be challenged on direct appeal." *Bangerter v. Petty*, 2010 UT App 49, ¶ 8, 228 P.3d 1250 (citation and internal quotation marks omitted).

¶22 The County asserts that the underlying judgment is void because the probate court lacked jurisdiction over Nebeker's untimely claim. In support of its position, the County quotes three paragraphs from *In re Estate of Ostler*, 2009 UT 82, 227 P.3d 242, and *In re Estate of Uzelac*, 2005 UT App 234, 114 P.3d 1164, which both concluded that claims were jurisdictionally barred due to the respective plaintiffs' failures to comply with the time period for bringing a claim against an estate. In *Ostler*, the Utah Supreme Court reviewed the district court's decision to dismiss a wrongful death claim made by a mother on behalf of her child against the child's father's estate because the mother had not brought the claim within the time period set forth in section 803 of the probate code. 2009 UT 82, ¶ 1. The supreme court concluded that section 803 is a "nonclaim" statute, which "imposes a condition precedent to the enforcement of a right of action, that is to say, the claim must be presented within the time set in" the statute. *Id.* ¶¶ 17, 21 (citation and internal quotation marks omitted). The failure to do so "operates to deprive a court

_____

amended cross-claim related back to the date Nebeker filed the original cross-claim. We do not reach this argument because we conclude that the County has not demonstrated that the Rhineer estate judgment was void and thus subject to collateral attack.

of jurisdiction" and bars the claim. *Id.* ¶ 17 (citation and internal quotation marks omitted). And the statutory bar "can neither [be] waive[d] . . . nor toll[ed]." *Id.* (citation and internal quotation marks omitted); *see also In re Estate of Uzelac*, 2005 UT App 234, ¶ 12 (affirming the trial court's denial of the wife's breach of contract claim against her husband's estate because the claim was barred by the wife's failure to file it within the time period set forth by section 803).

¶23    By simply assuming that *Ostler* and *Uzelac* are dispositive, however, the County has failed to address the district court's reasoning for denying the County's motion to dismiss. The district court explained that the motion to dismiss constituted an impermissible "collateral attack on a final judgment issued in a [separate] case" because even if the issuance of the Writ was precluded by the probate code, the district court still had sufficient jurisdiction over the subject matter of probate generally to vest it with authority to decide the underlying case. Nebeker has advanced the same reasoning in his responsive briefing, arguing that the Rhineer estate judgment was not subject to collateral attack. The supreme court has confined the concept of a void judgment to the circumstance where the rendering court lacked subject matter jurisdiction, that is, where the court was simply without authority to entertain the kind of case that it purported to decide. *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 30, 266 P.3d 702; *see also Bangerter*, 2010 UT App 49, ¶ 8 ("Errors other than lack of jurisdiction render the judgment merely voidable, and a voidable judgment can only be challenged on direct appeal." (citation and internal quotation marks omitted)). The determination of a court's subject matter jurisdiction requires evaluation of "the relationship between the claim and the forum" to determine whether the subject is one that the court has authority to decide; a conclusion that the court was barred from providing the specific relief sought therefore is not determinative of the subject matter jurisdiction question. *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 31 (citations and internal quotation marks omitted).

¶24   An example of this crucial distinction is found in the landmark case of *Johnson v. Johnson*, 2010 UT 28, 234 P.3d 1100 — a case that the County fails to mention, even though the district court relied on it (and its progeny) in denying the motion to dismiss and Nebeker cited it extensively in support of his position that the Rhineer estate judgment was not void. In *Johnson*, the district court entered a divorce decree after the parties had stipulated to the division of their assets; neither party appealed. *Id.* ¶¶ 1–2. Six years later, Mr. Johnson filed a motion to vacate the decree on the basis that the district court lacked subject matter jurisdiction over the divorce case because the parties had never been legally married. *Id.* ¶¶ 2–3. The district court denied the motion, and Mr. Johnson appealed. *Id.* ¶ 5. The Utah Supreme Court held that the court that entered the divorce decree had jurisdiction to do so despite the lack of a valid marriage because "the district court clearly has the authority to adjudicate divorces," *id.* ¶¶ 12–13, and "[w]here the court has jurisdiction over the class of case involved, [the] judgment is not void on the ground that the right involved in the suit did not embrace the relief granted," *id.* ¶ 9. Consequently, the supreme court concluded that Mr. Johnson could not collaterally attack the underlying divorce decree because that judgment was merely voidable. *Id.* ¶ 14.

¶25   Later, in *In re Adoption of Baby E.Z.*, 2011 UT 38, 266 P.3d 702, the supreme court reiterated the *Johnson* principle when it stated that "[i]n determining whether a court has subject matter jurisdiction, we focus on whether the court has authority over the general class of cases to which the particular case at issue belongs, rather than on the specific facts presented by any individual case." *Id.* ¶¶ 33–34. The court then applied this principle to reach a conclusion that because the district court had subject matter jurisdiction over adoptions generally, the court's adoption ruling was valid despite the fact that another statute gave jurisdiction under the facts of the case to the commonwealth of Virginia. *Id.* ¶¶ 35–39.

¶26    In the case before us, the district court applied the reasoning of *Johnson* and *In re Adoption of Baby E.Z.* and concluded that it had authority over "probate proceedings" even if the relief Nebeker sought—a judgment against the Rhineer estate—might have been legally unavailable due to his failure to timely present his underlying claims against the estate. While this position seems to find support in *Johnson*, we note that *Johnson* also recognizes a principle that seems to undermine it: a district court lacks subject matter jurisdiction even where the court may have general jurisdiction to resolve the type of dispute presented "when the statute permitting a party to sue another party requires statutory compliance, as with notice of claim requirements for suit against governmental entities." 2010 UT 28, ¶ 9. An argument can be made that the probate code's time limits for claim filing are the sort of "statutory compliance" requirements that fit within this principle. *See id.* But the County does not make this argument; rather, it simply ignores *Johnson* and instead focuses on an argument, based on another line of cases, that compliance with the probate code's time limitations is not subject to waiver. In doing so, the County fails to address a significant impediment to its position that the judgment is void, i.e., that a court's lack of jurisdiction to grant the relief sought does not automatically invalidate its judgment but may render it merely voidable and therefore not subject to collateral attack.

¶27    The County's use of unanalyzed quotes from *Ostler* and *Uzelac* to support its position that the Rhineer estate judgment was void does not satisfy its obligation to thoroughly analyze the case law and its application to the facts of the present case. *See Hess v. Canberra Dev. Co.*, 2011 UT 22, ¶ 25, 254 P.3d 161 ("Meaningful analysis requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority." (citation and internal quotation marks omitted)). This conclusion is highlighted by the fact that, in response, Nebeker analyzed a competing position, adopted by the district court and supported by the landmark *Johnson* case, which demonstrates that the subject is much more complex than the County had portrayed it. And even if "a careful analysis of

[*Johnson*] and similar cases might convince us that the facts of this case mandate one result or the other, we will not conduct that analysis on a party's behalf." *See State v. Dennis*, 2007 UT App 266, ¶ 14, 167 P.3d 528. We therefore affirm the district court's decision that the Rhineer estate judgment was not subject to collateral attack.

### III. Duty

¶28　The County next challenges the district court's judgment on the basis that the County had no duty to Nebeker to record the Writ. According to the County, Nebeker was never entitled to the Writ he obtained on March 26, 2004, because the probate code precludes the issuance of a writ of attachment against the property of an estate.[8] Without a legitimate writ to create a lien on the Condominium Unit, the County contends, Nebeker cannot obtain damages from the loss of the unit that the Writ was intended to prevent.

¶29　There is some basis for the County's argument that the issuance of a writ in a probate matter is improper in both the rules governing issuance of writs and the probate code. For instance, the versions of rules 64A and 64C of the Utah Rules of Civil Procedure in effect at the time Nebeker obtained the Writ in March 2004 permit a "plaintiff, at any time after the filing of a complaint . . . [, to] have the property of the defendant, *not exempt from execution*, attached as security for the satisfaction of any judgment that may be recovered." Utah R. Civ. P. 64C

---

8. The County does not assert on appeal, as it did in support of its motion to dismiss, that the Writ was void due to its being issued prior to the appointment of a personal representative for the estate.

(emphasis added).[9] The probate code identifies the property of an estate as exempt from execution: "No execution may issue upon nor may any levy be made against any property of the estate under any judgment against a decedent . . . ." Utah Code Ann. § 75-3-812 (Michie 1993). Other provisions of the probate code offer alternative protections to creditors. *See, e.g., id.* §§ 75-3-501 to -505 (court-supervised administration); *id.* § 75-3-607 (order restraining personal representative's authority in administration of estate, including asset distribution); *id.* § 75-3-605 (demand for payment of bond by personal representative); *id.* § 75-3-611 (termination of personal representative's appointment by removal). The Writ, however, was issued in the course of the Rhineer estate litigation, and, as discussed above, the County has not persuaded us that the Rhineer estate judgment or its proceedings are open to collateral attack. *See supra* ¶ 27. Thus, we must accept that the writ was issued, whether or not the law otherwise permitted it.

¶30    A question nevertheless remains about whether the County had a legal duty to Nebeker, the breach of which is answerable in damages. Rule 64C provides that attachment is made on real property when the "officer to whom the writ is

---

9. Rule 64A specifically governs prejudgment writs of attachment. Utah R. Civ. P. 64A (Prejudgment writs of replevin, attachment and garnishment). In March 2004, when the Writ was issued in this case, rule 64A only provided a means to ensure "procedural due process . . . in the issuance of prejudgment writs of . . . attachment" and did not outline the grounds for issuing one. *Id.* purpose. The grounds for issuing a writ of attachment, whether pre- or post-judgment, were outlined in rule 64C. *Id.* R. 64C(a). In November 2004, both rules were repealed and reenacted. *Id.* R. 64A repeals and reenactments; *id.* R. 64C repeals and reenactments. In its reenacted form, rule 64A contains the same grounds for issuing a prejudgment writ of attachment as rule 64C contains for issuance of writs of attachment generally.

directed . . . *file*[*s*] *with the recorder of the county* [*in which the defendant's deed to the property is recorded*] *a copy of the writ, together with a description of the property attached, and a notice that is attached*" and "by leaving a similar copy of the writ, description and notice with an occupant of the property, if there is one, and if not, then by posting the same in a conspicuous place on the property attached." Utah R. Civ. P. 64C(e)(1) (emphasis added). Rule 64C certainly imposes an obligation upon the sheriff to record a writ with the legal description of the property, and in the Writ itself, the court orders the sheriff to "attach and safely keep all of the property of the Estate of John M. Rhineer," including the Condominium Unit. But the fact that the law requires the sheriff to comply with court orders does not necessarily create a duty, or establish a standard of care owed, to a third person. *See Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 19, 215 P.3d 152 (citing W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 53, at 356 (5th ed. 1984) (describing duty as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another" (citation and internal quotation marks omitted))).

¶31 The problem for the County, however, is that the district court determined that rule 64C does, in fact, create a legal duty to the writ holder and identifies the standard of care for fulfilling that duty—recording the writ with the legal description. And the County has not provided this court with any legal analysis or authority to rebut that determination.[10] Instead, the County simply concludes that based on the rule's plain language, it "in no way creates any affirmative duty on behalf of Summit County."

---

10. The County does offer some case authority in support of its position that the sheriff did not owe any duty to Nebeker under the common law. The basis of the district court's duty determination, however, was rule 64C, not the common law.

¶32   Although duty is a legal question that an appellate court is generally equipped to resolve, whether a duty exists is not a simple issue. "A court determines whether a duty exists by analyzing the legal relationship between the parties, the foreseeability of injury, the likelihood of injury, public policy as to which party can best bear the loss occasioned by the injury, and other general policy considerations." *Normandeau*, 2009 UT 44, ¶ 19 (citation and internal quotation marks omitted). In other words, "[l]egal duty . . . is the product of policy judgments applied to relationships." *Id.* (citation and internal quotation marks omitted). "A court's conclusion that duty does or does not exist is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection." *Webb v. University of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 (alteration in original) (citations and internal quotation marks omitted).

¶33   The County has not offered any analysis of the policy considerations that must inform a determination of whether the County's *obligation* to properly record the Writ (inhering in the requirements of rule 64C and in the court's order incorporated in the Writ itself) rose to the level of an *actionable duty* to Nebeker. And although this court can identify some of the implications of imposing or not imposing a duty on this relationship, it is inadvisable to do so in the first instance without adequate input from the parties who have a vested interest in the outcome. *See State v. Robison*, 2006 UT 65, ¶¶ 23–24, 147 P.3d 448 (explaining that appellate courts must resist the temptation to reverse on an insight of their own invention "without examination [of] the quality of [that] insight"). Furthermore, because the County is a governmental entity, other doctrines, such as the public duty doctrine[11] and the governmental immunity act, may complicate this analysis.

---

11. Utah's public duty doctrine imposes a specific duty of care on governmental entities only when there is a specific connection between the agency and an individual, thereby

(continued . . .)

¶34 Resolving this issue would thus require that we step outside our role as a neutral reviewing body and "assume [the] . . . burden of argument and research" on the County's behalf. *See Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 (citation and internal quotation marks omitted). To do this would "distort [the] fundamental allocation of benefits and burdens" that lies at the heart of our appellate system, and it is therefore a task we should not undertake, except under extraordinary circumstances, which we do not find to be present here.[12] *See Robison*, 2006 UT 65, ¶¶ 21–23; *U.S.A. United Staffing Alliance*,

---

providing protection for governmental activities benefitting the public at large. *Day v. State*, 1999 UT 46, ¶ 12, 980 P.2d 1171. The public duty doctrine, however, does not apply where a governmental actor "causes injury to persons who stand so far apart from the general public that [they can be described] as having a special relationship to the governmental actor." *Webb v. University of Utah*, 2005 UT 80, ¶ 11, 125 P.3d 906; *Day*, 1999 UT 46, ¶ 12.

The County does make an assertion that the public duty doctrine prohibits Nebeker's recovery. It does so, however, in the context of asserting that it had no duty to Nebeker under the common law to record the Writ. As we have just mentioned, the determination that the County had a duty to Nebeker was not based in common law. The County does not address how the public duty doctrine interplays with the question of whether an actionable duty exists under these circumstances.

12. The district court apparently found the County's duty analysis lacking in the same regard. In its order granting summary judgment, the court noted that the County had "agreed" at oral argument that "it had not addressed its liability via the Sheriff." The County later attempted to correct that oversight by submitting a copy of a statute it deemed pertinent but without including any supporting argument. The district court did not find the statutory language alone to be persuasive, nor do we.

*LLC v. Workers' Comp. Fund*, 2009 UT App 160, ¶ 14, 213 P.3d 20. As a result, we affirm, without further analysis, the district court's conclusion that the County owed Nebeker a duty to record the Writ.

## IV. Breach

¶35 The County next asserts that if it had an actionable duty, there was no breach because the sheriff's recording of the Writ, even if defective, was sufficient to satisfy its duty. To support its position, the County cites two provisions in the recording statutes and four cases that it claims demonstrate that a *recorder* would not be in breach of any duty if he or she recorded the Writ without the legal description because recording is merely a ministerial task that does not give rise to liability. The County then asks us to extend that logic to the County Sheriff, arguing that because the recorder is authorized to record a defective writ, the sheriff cannot be liable for presenting the Writ without the property's legal description. The County's argument is unpersuasive.

¶36 The first statutory provision that the County cites provides that the "county recorder may refuse to accept a document for recording if the document does not" "contain[] a legal description of the real property," Utah Code Ann. § 57-3-105(2), (4) (LexisNexis Supp. 2013), while the second one states that "[a] recorded document imparts notice of its contents regardless of any defect, irregularity, or omission in its execution, attestation, or acknowledgment," *id.* § 57-4a-2 (LexisNexis 2010). The County argues that the permissive language "may refuse" in the first provision implies that the recorder may choose not to "refuse" but may instead record a document that lacks a legal property description. It then cites several cases, which it contends demonstrate that recording is a ministerial act that "simply does not rise to negligent conduct, regardless of the general duties that may be imposed." According to the County, these cases reinforce the statutory

provisions that excuse a recorder from liability when he or she records a defective writ.

¶37 Even assuming that the County's interpretation of the statutory provisions and cases is accurate with respect to the recorder—which we do not decide—the same logic cannot excuse the sheriff's failure to properly record the Writ. First, the plain language of the pertinent statutes and rules does not support the County's position. When construing a statute or a rule, we "assume that the legislature used each term in the statute advisedly" and we will "read the statute's words literally unless such a reading is unreasonably confused or inoperable." *In re Adoption of R.M.*, 2013 UT App 27, ¶ 6, 296 P.3d 757 (citation and internal quotation marks omitted). The district court determined that a duty arose out of rule 64C of the Utah Rules of Civil Procedure, which directed the sheriff to attach the subject property "by filing with the recorder of the county [in which the defendant's deed to the property is recorded,] a copy of the writ together with a description of the property attached," Utah R. Civ. P. 64C(e)(1). The recording statutes provide further instruction on how that duty is to be carried out: "A [real property] document . . . is entitled to be recorded . . . only if the document contains a legal description of the real property," and a person "may not present . . . a document for recording if the document does not conform to this section." Utah Code Ann. § 57-3-105(2), (4) (LexisNexis Supp. 2013).

¶38 A plain reading of both rule 64C and the recording statutes thus demonstrates that the sheriff is obligated to present a writ containing the property's legal description in order for that writ to be eligible for recording. Although the recording statutes seem to excuse the county recorder's recording of a writ that does not meet the legal description requirement, they say nothing about the requirement that the *sheriff* present for recording a writ in compliance with the statute. *See id.* § 57-3-105(4). Rather, the first provision states that as a condition of eligibility for recording, a document must "contain[] a legal description of real property" and simply gives the recorder the

authority to reject a document that fails to comply with this requirement without imposing a duty to do so. *Id.* § 57-3-105(2), (4). Thus, in providing that "[a] person may not present and a county recorder *may refuse* to accept a document for recording if the document does not conform to this section," *id.* § 57-3-105(4) (emphasis added), the statute emphasizes the requirement that the presenter comply with the law while offering protection to the recorder if he or she fails to observe that the document, for example, is lacking the required legal description. *Cf. Jackson v. County of Amador*, 112 Cal. Rptr. 3d 506, 511–12 (Ct. App. 2010) (declining the plaintiff's request to hold the county recorder liable for recording a power of attorney without the proper signature because "[i]t has never been the duty of the county recorder to make determinations of that type of legal sufficiency" (alteration, citation, and internal quotation marks omitted)). It does not say or reasonably imply that a recorder's acceptance of a nonconforming document exonerates the person presenting that document from the requirements of the statute.

¶39   And the cases cited by the County do not support a reading of our statute that excuses the presenter—in this case, the sheriff—from his or her obligation to include "a legal description of the real property" on the Writ, *see* Utah Code Ann. § 57-3-105(2); Utah R. Civ. P. 64C(e)(1), merely because the recorder recorded the Writ without such a description. *See, e.g., Jackson*, 122 Cal. Rptr. 3d at 511–12; *Schneider v. County of Elko*, 75 P.3d 368, 383 (Nev. 2003) (holding that the county recorder did not have a "duty to determine whether a [subdivision map] serves its intended purpose, given that recording a document is purely a ministerial task" despite the statute's provision that the recorder may be liable for "willfully, negligently, or untruly record[ing] a document in a manner other than as directed" by statute), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008). The lone Utah case cited by the County involves a dispute between a waste management service district and Bountiful City about the payment of service fees after the city failed to record a resolution and plat to annex certain land that had been served by the service district. *Davis*

*Cnty. Solid Waste Mgmt. v. City of Bountiful*, 2002 UT 60, ¶¶ 2–4, 52 P.3d 1174. The County cites this case for the proposition that because recording is purely a ministerial task, a governmental entity cannot be liable for any errors that arise in the recording. The Utah Supreme Court, however, rejected Bountiful City's contention that recording was only a ministerial task; rather, the court held that the act of recording was essential to the city's claim to have annexed the land.[13] *Id.* ¶ 19.

¶40    Accordingly, we decline to disturb the district court's determination that the sheriff's failure to deliver the Writ to the county recorder with the required legal description "amounted to a breach of duty."

### V. Proximate Cause

¶41    The County next contends that its failure to record the Writ was not the proximate cause of Nebeker's injury, because

---

13. To the extent that the County may have intended its citation to Utah Code section 57-4a-2 to advance an argument that the sheriff's omission of the legal description resulted in no harm because once the recorder chose to record the Writ without the legal description, the recorded document is effective to impart notice of its contents, we find that argument unpersuasive as well. It is difficult to ascertain how the fact that a defective recorded document still imparts notice of its contents remedies the sheriff's failure to include the legal description in the recorded document. Notice of the Writ can be given only if its recording connects it to a particular parcel of land. *See* Utah Code Ann. § 57-4a-2 (LexisNexis 2010) (explaining that "defect[s] . . . in [a document's] execution, attestation, or acknowledgement" will not affect its ability to impart notice if the document is recorded against the property). It is undisputed that the Writ did not give notice, actual or constructive, to the bona fide purchaser of the Condominium Unit because the Writ was never connected to the unit by a legal description.

the actual cause of the loss was Greg Rhineer's sale of the Condominium Unit and dissipation of the proceeds. According to the County, Greg Rhineer's sale of the Condominium Unit and his wrongful dissipation of the proceeds of that sale constituted an intervening act that superseded the sheriff's actions as a proximate cause of Nebeker's injury.

¶42    A person can be legally liable for his negligent act if the act was the "efficient, producing cause" of the injury, *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2642 (2011) (internal quotation marks omitted), meaning "that cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred," *Bunker v. Union Pac. R.R. Co.*, 114 P. 764, 775 (Utah 1911). *See also Holmstrom v. C.R. England, Inc.*, 2000 UT App 239, ¶ 36, 8 P.3d 281 (explaining that the defendant's negligence is a proximate cause if the negligence "played a substantial role in causing the [plaintiff's] injuries"). "[A] more recent negligent act may break the chain of causation and relieve the liability of a prior negligent actor under the proper circumstances." *Godesky v. Provo City Corp.*, 690 P.2d 541, 544 (Utah 1984). But an "intervening act does not automatically become a superseding cause that relieves the original actor." *Id.* at 545. Rather, a negligent actor remains responsible for the *foreseeable* negligent acts of another, later actor. *Id.*; *Cruz v. Middlekauff Lincoln–Mercury, Inc.*, 909 P.2d 1252, 1257 (Utah 1996) ("An intervening, independent, and efficient cause ordinarily severs whatever connection there may be between the defendant's negligence and the plaintiff's injuries, *unless* the intervening cause was foreseeable."). In that case, both actions become concurring causes, and each actor can be held liable for his or her own negligence. *Godesky*, 690 P.2d at 545–46.

¶43    Here, the district court concluded that "it was foreseeable that [the Condominium Unit would be sold] . . . without a properly recorded physical description in the Writ" because "without such a foreseeable act, there would have been no need to obtain the Writ in the first place." The very purpose of such a

writ is to provide a plaintiff with "security for the satisfaction of any judgment that he may recover," *In re McNeely*, 51 B.R. 816, 818 (Bankr. D. Utah 1985), and the possibility that the assets of a defendant might be disposed of, through legal means or otherwise, is a foreseeable risk of failing to properly record such a writ. Rule 64C itself anticipates the possibility that a defendant may act illegally to put assets out of reach of a creditor by providing that a writ may issue when it is shown that the defendant "is about to assign, dispose of or conceal, any property with intent to defraud creditors." Utah R. Civ. P. 64C(a)(4). Thus, the rule's requirement that the sheriff record a writ with the legal description of the subject real property safeguards the writ holder's interest by notifying all the world of the encumbrance. *Id.* R. 64C(e)(1); *see also* Utah Code Ann. § 57-3-102(1) (LexisNexis 2010). Without the recording, the purpose of a writ can be thwarted, perhaps most effectively by someone tempted to act unlawfully in dissipating real property assets entrusted to his or her care. Because Greg Rhineer's sale of the Condominium Unit and dissipation of the proceeds were foreseeable consequences of the County's failure to properly record the Writ—indeed, were precisely the result the Writ was designed to prevent—his actions did not amount to a superseding cause that absolves the County of liability. Accordingly, we affirm the district court's conclusion that the County's negligent recording was a proximate cause of Nebeker's injury.

## VI. Damages

¶44   Both the County and Nebeker have appealed the district court's damages decision.

### A.   The County's Appeal

¶45   The County asserts that it cannot be liable in damages to Nebeker because despite the issuance of the Writ, Nebeker was merely an unsecured creditor and thus would not have been able to collect against the insolvent Rhineer estate in any event. *See generally Wasatch Livestock Loan Co. v. Nielson*, 56 P.2d 613, 617

(Utah 1936) ("One who was a mere general creditor before the death remains such after it. His position with respect to other creditors remains unchanged."), *amended in part by* 61 P.2d 616 (Utah 1936); *id.* at 620 ("[I]t is apparent that a creditor, after the death of his debtor, is precluded from securing a specific lien on the property of the estate by attachment, execution, or other legal process . . . [,] that is, claims presented and allowed have the same standing whether they be founded upon a judgment or claims allowed and approved by the administrator and the court."); *Sheehan v. Gamberg*, 677 P.2d 254, 256 (Alaska 1984) (interpreting a provision of the Alaska probate code, identical to Utah's, precluding execution or levy on an estate, to mean that a judgment holder cannot obtain a judgment lien and execute upon it after the decedent's death, because the purpose of the statute "is to freeze the status of all claims at the death of the debtor in order to provide for the orderly administration of the estate"). The County argues that the estate was insolvent and unsecured creditors were not paid on their claims because the estate owed federal and state tax debts in excess of all the estate's assets, including the Condominium Unit. In other words, even if the Condominium Unit had been preserved, there were too few assets to satisfy the Rhineer estate's numerous tax debts, and thus none of the Condominium Unit's proceeds could be paid toward the claims of unsecured creditors such as Nebeker. Further, the County argues, the Condominium Unit was already encumbered by a mortgage at the time the Writ was issued, making it unlikely that the unit would have become part of the Rhineer estate, and thus available for distribution, had the Writ been properly recorded.

¶46    The district court rejected the same arguments following a bench trial, making findings of fact about the debt load of the estate contrary to the County's position. On appeal, the County asserts that the district court's findings of fact are clearly erroneous. We will conclude that "[a] trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made."

*Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 (citation and internal quotation marks omitted). To prevail on such a challenge, the County must acknowledge the evidence that supports the findings and demonstrate "a basis for overcoming the healthy dose of deference owed to factual findings." *State v. Nielsen*, 2014 UT 10, ¶¶ 41–42 (noting that an appellant is unlikely to "carry its burden of persuasion on appeal if it fails to marshal"). The County has failed to carry its burden of persuasion.

¶47　The district court found that although the Condominium Unit had been encumbered by a mortgage at one time, it was unencumbered when the unit was sold; that in the absence of a properly recorded writ, the unit had been sold to a bona fide third-party purchaser and the proceeds dissipated by the personal representative; and that the unit had a fair market value of $335,000 at the time of sale in August 2004. The County now contends that the Condominium Unit was in fact encumbered at the time of the Writ's issuance. The County, however, neither cites any evidence in the record that supports its position nor acknowledges the record evidence (an accounting showing that the mortgage on the unit had been satisfied) that supports the court's finding that the unit was not encumbered by the mortgage when the unit was sold. The County therefore has failed to show that the court's finding that the Condominium Unit was unencumbered was clearly erroneous. *See id.; Kimball*, 2009 UT App 233, ¶ 14.

¶48　The district court also rejected the County's assertion that the Rhineer estate would have been required to apply all of its assets, including any proceeds from the sale of the Condominium Unit, to satisfy various federal and state tax liens. The court found that the IRS had never filed a federal tax lien against John Rhineer or the Condominium Unit and that the County had "offered no evidence that the Rhineer Estate had more federal tax debt than assets." It also found that although there had been twenty-one state tax judgments against John Rhineer individually, they all had been voluntarily dismissed or

had expired. On appeal, the County asserts that there are in fact numerous tax liens that would have consumed all of the estate's assets. However, at one of the two record citations provided by the County—an accounting by the estate's personal representative—the personal representative indicated that although John Rhineer had not paid federal income taxes for a period of years, the IRS "has not asserted a claim against the Rhineer Estate" and "there is no record [of] any federal tax liens . . . recorded against John Rhineer or the Rhineer Estate." The accounting also indicates that all but two of the state tax liens had been released.[14] Because there is factual evidence to support the findings, the findings are not clearly erroneous. *Kimball*, 2009 UT App 233, ¶ 14.

¶49   We therefore affirm the district court's determination that the County was required to pay the damages Nebeker incurred due to the County's negligence in recording the Writ on the Condominium Unit.

B.   Nebeker's Cross-appeal

¶50   The district court calculated Nebeker's damages from the loss of the unit to be $594,400.21. Under the Governmental Immunity Act of Utah, however, the maximum allowable judgment for "property damage" is $221,400, while "personal injury" damages are capped higher, at $553,500. Utah Code Ann. § 63-30d-604(1)(c) (LexisNexis Supp. 2004) (current version at *id.* § 63G-7-604(1)(c) (LexisNexis 2011)); Utah Admin. Code R37-4-2, -3(4). The court applied the property damage cap and awarded Nebeker $221,400. Nebeker challenges the district court's

---

14. The district court stated in its findings of fact and conclusions of law that the two remaining liens had expired and been released by the time of trial. The County has not specifically challenged that determination.

decision that the statutory cap for property damage, rather than the cap for personal injury, applied to his judgment.

¶51 When construing a statute, we "assume that the legislature uses each term in the statute advisedly" and we will "read the statute's words literally unless such a reading is unreasonably confused or inoperable." *In re Adoption of R.M.*, 2013 UT App 27, ¶ 6, 296 P.3d 757 (citation and internal quotation marks omitted). The Act defines the terms "property damage" and "personal injury." "Property damage" means "injury to, or loss of, any right, title, estate, or interest in real or personal property." Utah Code Ann. § 63G-7-102(8) (LexisNexis 2011). "Personal injury" is defined to include everything else: "an injury of any kind other than property damage." *Id.* § 63G-7-102(6).

¶52 Nebeker asserts that the sheriff's negligence did not injure a "right, title, estate, or interest in real . . . property," *see id.* § 63G-7-102(8), because the Condominium Unit was never levied upon pursuant to the Writ and, even if the Writ had been properly recorded, Nebeker would have obtained only a "contingent lien in the" Condominium Unit that "would not have given [him] a title, estate, or other ownership right or interest" in property.[15] We are not persuaded.

¶53 Nebeker sought, and received, damages resulting from the County's failure to properly record the Writ. Had the Writ been properly recorded, Nebeker would have obtained a lien, albeit an inchoate one, upon the property: "[W]hen property is levied upon pursuant to a writ of attachment, plaintiff acquires an inchoate or contingent lien or interest in the property

---

15. In making his argument, Nebeker assumes that had the Writ been properly filed, he would have been a secured creditor. He does not address how the damages cap might be applied if he is only an unsecured creditor, as the County contends. We therefore do not reach that issue.

attached," *Jensen v. Eames*, 519 P.2d 236, 238 (Utah 1974); such an interest "is a vested interest of the attaching creditor, which affords specific security for the satisfaction of the debt," *In re McNeely*, 51 B.R. 816, 819 (Bankr. D. Utah 1985). Then, once the judgment was entered in Nebeker's favor, "the attachment lien [would have] merge[d] with the judgment lien," thereby "perfect[ing] the inchoate lien" as of the date the Writ was issued. *See id.* A judgment lien is clearly a property interest. *Black's Law Dictionary* 1006 (9th ed. 2009) (defining "lien" as a "legal right or interest that a creditor has in another's property"). And the fact that the lien was merely inchoate at the time the Writ was improperly recorded does not change the fundamental character of Nebeker's interest. Nebeker's loss is not simply the inchoate writ of attachment but also the failure of that inchoate interest to become an actual lien upon the property once the judgment entered. Just as a seed represents the plant it will grow into, the inchoate interest arising from a writ of attachment cannot be defined except in terms of the property interest it is meant to become, i.e., "[a] property interest that has not yet vested," *see id.* at 886 (defining inchoate interest). Thus, because the damages Nebeker sought cannot be meaningfully conceptualized or defined as anything other than the loss of a legal "right . . . or interest in real property," Utah Code Ann. § 63G-7-102(8), we conclude that the district court properly capped Nebeker's damages according to the property damage limit.

## CONCLUSION

¶54    For the foregoing reasons, we affirm the district court's judgment.

_____

ON PETITION FOR REHEARING

¶55    After issuance of the decision in this case, the County filed a petition for rehearing, asserting that in footnote 14 of our June 12, 2014 decision, we "overlooked or misapprehended a critical fact." In response to the petition, we have elected to strike the footnote previously numbered 14 from the decision. Except for striking the footnote, our decision remains unchanged. We address the County's arguments on petition for rehearing as follows.

¶56    The previous version of footnote 14 read,

> The district court awarded Nebeker damages for the loss of the Condominium Unit on the basis that "he would have had a lien" but for the County's failure to perform the "duty [it] owed to Mr. Nebeker." The County counters that regardless of the Writ, Nebeker was an unsecured creditor who was only entitled to his pro rata share of the assets that were available for unsecured creditors as a whole. Even if the district court erred in treating Nebeker as a secured creditor—an issue we need not resolve—any error was harmless because the court also concluded that none of the other persons who asserted unsecured claims on the estate had their claims approved so as to allow them to participate in any proportional distribution of estate assets. Thus, regardless of whether the County's proper recording of the Writ would have given Nebeker the status of a secured creditor with the Condominium Unit as collateral, or whether Nebeker would have had merely an unsecured claim against the unencumbered assets of the estate available for distribution (apparently limited to the Condominium Unit) to the class of unsecured creditors, of which Nebeker was the sole member, he was entitled to the full value of the unit.

¶57    The County challenges our conclusion that any error in the district court's decision to treat Nebeker as a secured creditor "was harmless because the court also concluded that none of the other persons who asserted unsecured claims on the estate had their claims approved so as to allow them to participate in any proportional distribution of estate assets." It asserts that the district court never found that there were no other unsecured creditors. According to the County, the effect of our conclusion that the district court made such a finding was to "allow[] Nebeker to obtain . . . money based on the loss of an Estate asset to the exclusion of at minimum the two other creditors with allowed claims." In his response, Nebeker conceded "that two other [unsecured] claims against the Estate were approved."

¶58    Despite footnote 14's indication otherwise, it is apparent that the County is making an argument about Nebeker's entitlement to only a pro rata share of any distribution for the first time in a petition for rehearing. At no point prior to rehearing did the County assert that Nebeker's entitlement to the Rhineer estate judgment was limited to his pro rata share; it simply argued that he was entitled to no recovery at all.[16] In its initial briefing, the County argued that governing law dictates that upon the debtor's death, "all unsecured creditors['] claims be treated equally." We do not disagree with this proposition. *See supra* ¶ 45 (citing *Wasatch Livestock Loan Co. v. Nielson*, 56 P.2d 613, 617 (Utah 1936) ("One who was a mere general creditor before the death remains such after it. His position with respect to other creditors remains unchanged."), *amended in part by* 61 P.2d 616 (Utah 1936); *id.* at 620 ("[I]t is apparent that a creditor, after the death of his debtor, is precluded from securing a specific lien on the property of the estate by attachment, execution, or other legal process . . . [,] that is, claims presented and allowed have the same standing whether they be founded

_____

16. Indeed, nowhere in the opening or reply brief did the County use the words "proportionate, " "proportional," or "pro rata."

upon a judgment or claims allowed and approved by the administrator and the court.")). But the County made this argument only in the context of its claim that the Writ was improperly issued and so it did not give Nebeker secured creditor status, which meant that Nebeker could only recover whatever he would have been entitled to as an unsecured creditor of the estate. Because the County believed that the unsecured creditors would not have received any distribution from the estate even if the Condominium Unit had been preserved, *see supra* ¶ 45, it argued that Nebeker was not entitled to collect anything from the County.

¶59 In other words, the County opted to pursue challenges to the propriety of the Writ's issuance, the resulting judgment, and the County's liability on that judgment, rather than to address how any judgment, if sustained, might be allocated among the creditors. In making this choice, the County did not raise any claims regarding proportionate distribution. Furthermore, it neither challenged the district court's finding that Nebeker was the only unsecured creditor that had reduced its claim to judgment nor contested the district court's implied legal conclusion that, as a result, there simply were no unsecured creditors, other than Nebeker, who had any viable claim to a share in any recovery from the County.

¶60 We will not now consider such a challenge raised for the first time on rehearing. We routinely decline to consider an issue raised for the first time in a reply brief. *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." (citation and internal quotation marks omitted)). And we see no reason to do so when the issue is presented in the first instance in a petition for rehearing. *See generally Harper v. Evans*, 2008 UT App 165, ¶ 18 n.5, 185 P.3d 573 (refusing to consider, on petition for rehearing, the appellant's claim regarding the commencement of the sixty-day period for

agency review under the administrative code because that "issue was not raised in the initial briefing").

———————